STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v
MICHIGAN MUNICIPAL RISK MANAGEMENT AUTHORITY
(ON REMAND)

Docket No. 319710. Submitted June 30, 2016, at Lansing. Decided
August 30, 2016, at 9:00 a.m. Leave to appeal sought.

State Farm Mutual Automobile Insurance Company brought an
action against Michigan Municipal Risk Management Authority
(MMRMA) and QBE Insurance Corporation to determine which
one had highest priority and was, therefore, responsible for
paying no-fault benefits to a motorcyclist injured when hit by a
car running a red light because the car was being chased by a
police vehicle. QBE moved for summary disposition on the ground
that it could rescind its policy on the basis of fraud. The court,
Alexander C. Lipsey, J., denied the motion, relying on the
innocent-third-party rule. QBE sought leave to appeal. The Court
of Appeals granted leave and consolidated the case with another
interlocutory appeal in which State Farm was appealing a denial
of summary disposition regarding whether the motor vehicle
operated by the police officer was "involved in" the accident. QBE
argued on appeal that the innocent-third-party rule was abro-
gated in *Titan Ins Co v Hyten*, 491 Mich 547 (2012). The Court of
Appeals, RIORDAN, P.J., and MURPHY and BOONSTRA, JJ., affirmed
the trial court's denial of QBE's motion for summary disposition
in an unpublished opinion, issued February 19, 2015 (Docket Nos.
319709 and 319710). The Court of Appeals held that Michigan
caselaw had long denied an insurer's right to rescind an insur-
ance policy in order to avoid paying no-fault benefits to an
innocent third party, that *Titan* only applied to contractual
amounts in excess of statutory minimums, and that the motorcy-
clist's entitlement to benefits was statutory, not contractual. QBE
filed an application for leave to appeal in the Supreme Court. In
lieu of granting leave to appeal, the Supreme Court vacated the
judgment of the Court of Appeals and remanded the case to the
Court of Appeals for reconsideration of the issue. 498 Mich 870
(2015). The Supreme Court directed the Court of Appeals to hold
this case in abeyance pending a decision in *Bazzi v Sentinel Ins
Co*, 315 Mich App 763 (2016).

On remand, the Court of Appeals *held*:

*Bazzi* ultimately held that the innocent-third-party rule did not survive the Supreme Court's decision in *Titan*. *Bazzi* was precedentially binding under MCR 7.215(C)(2) and (J)(1). Therefore, the trial court erred by denying summary disposition to QBE on the basis of the innocent-third-party rule. The public-policy concerns raised by the abrogation of the innocent-third-party rule were more appropriately considered by the Legislature and not the courts.

Vacated and remanded.

MURPHY, J., concurring, agreed that the case was controlled by the decision in *Bazzi* and that the insurance company was not barred from pursuing a fraud defense on the basis of the innocent-third-party rule. Judge MURPHY wrote separately to highlight language in *Titan* that reflected a potential determination by the Supreme Court that the remedies for actionable fraud were limited in relation to statutorily mandated insurance coverage and benefits, including PIP benefits, and to suggest that the complete abrogation of the innocent-third-party rule would read that language out of the *Titan* opinion.

*Mellon Pries, PC* (by *James T. Mellon* and *David A. Kowalski*), for Michigan Municipal Risk Management Authority.

*Kallas & Henk PC* (by *Constantine N. Kallas* and *Michele L. Riker-Semon*) for QBE Insurance Corporation.

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

BOONSTRA, J.

### ON REMAND

This case is before us on remand from our Supreme Court. *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, 498 Mich 870 (2015). In our original opinion we, *inter alia*, affirmed the trial court's denial of summary disposition to third-party plaintiff/appellant QBE

Insurance Corporation (QBE) on the ground that the innocent-third-party rule barred rescission of the policy of insurance at issue. *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2015 (Docket Nos. 319709 and 319710).[1] The Supreme Court, in lieu of granting QBE's application for leave to appeal, vacated our opinion with respect to QBE and remanded the case, instructing us to hold this case in abeyance pending the outcome of *Bazzi v Sentinel Ins Co*, 315 Mich App 763; 891 NW2d 13 (2016). *State Farm Mut Auto Ins Co*, 498 Mich at 870. As *Bazzi* has now been decided, we consider the instant case and conclude that the innocent-third-party rule did not bar QBE's claim of fraud as a defense to an insurance contract and that the trial court therefore erred by denying QBE's claim of summary disposition. We vacate the portion of the trial court's order denying summary disposition to QBE under the innocent-third-party rule and remand for further proceedings consistent with this opinion.

### I. PERTINENT FACTS AND PROCEDURAL HISTORY

The facts of the case as a whole are set forth in our previous opinion, and we will not repeat them in full. See *State Farm Mut Auto Ins Co*, unpub op at 2-5. In relevant part, our previous opinion stated:

> QBE also moved for summary disposition pursuant to MCR 2.116(C)(10). QBE asserted, inter alia, that it was entitled to rescind its policy of insurance provided to [Whitney] Gray because Gray had procured her policy by

---

[1] Our original opinion was issued in two consolidated cases. *Id*. The instant case was deconsolidated from the case in Docket No. 319709 by order of this Court. *State Farm Mut Auto Ins Co v Mich Muni Risk Mgt Auth*, unpublished order of the Court of Appeals, entered September 14, 2015 (Docket Nos. 319709 and 319710). Nothing in this opinion alters our resolution of the case in Docket No. 319709.

defrauding QBE. According to QBE, Gray had supplied false information on her application for insurance by affirmatively indicating that [a 1999 Oldsmobile Cutlass] was registered to her, when in fact it was registered to Tina Poole, Gray's mother. Had Gray truthfully completed the application, QBE would never have issued the policy. Under such circumstances, QBE argued that it was entitled to rescind the insurance policy issued to Gray, and thus was entitled to be dismissed from the suit.

In support of its argument, QBE provided the application for insurance that had been submitted by Gray, which stated that the named insured "must be the registered owner" of the insured vehicle (the Cutlass). Gray had indicated on the application that she was the registered owner of the vehicle, when in fact the vehicle was registered to Poole. QBE argued that it would not have issued the policy had it been provided accurate information on the application. Gray testified at her deposition that she did not own the Cutlass.

Following a hearing, the trial court ruled that it was denying both QBE's and State Farm's motions for summary disposition. Regarding State Farm's motion, the trial court found that while it was not convinced by [the Michigan Municipal Risk Management Authority's] arguments, the question of "whether the police vehicle was in fact involved for purposes of establishing liability is something that should be presented to the trier of fact in this matter, namely the jury." Regarding QBE's motion, the trial court found that Gray "owned the 1999 Oldsmobile and therefore had insurance. She was therefore liable for the vehicle that she nominally owned, the 1998 Grand Prix, which was ultimately driven by Mr. Johnson." The trial court further stated that "as a matter of law I do not believe QBE would be entitled to claim a rescission of those mandatory benefits set forth in the No-Fault Act by statute as they relate to innocent third-parties."

The trial court entered separate orders denying summary disposition to State Farm and QBE on December 4, 2013. . . . With regard to QBE's motion, the ordered [sic] stated that it was denied

> for the reasons stated on the record, including,
> but not limited to . . . [i]nsurance coverage re-
> quired by statute, such as that of the No-Fault
> Act, MCL 500.3101, *et seq.*, cannot be re-
> scinded after an innocent third party has sus-
> tained injury which is the subject of the cov-
> erage required by statute . . . .

The order also stated as an additional reason for denial
that "[a]ny termination of the registration or title which
may be available would not have retroactive effect, so as to
alter the state of ownership or registration as of
08/12/2011." [*Id.* at 4-5.]

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a
motion for summary disposition." *Moser v Detroit*, 284
Mich App 536, 538; 772 NW2d 823 (2009). Summary
disposition is proper under MCR 2.116(C)(10) if "there
is no genuine issue as to any material fact, and the
moving party is entitled to judgment . . . as a matter of
law." "A genuine issue of material fact exists when the
record, giving the benefit of reasonable doubt to the
opposing party, leaves open an issue upon which rea-
sonable minds might differ." *West v Gen Motors Corp*,
469 Mich 177, 183; 665 NW2d 468 (2003). We consider
the affidavits, pleadings, depositions, admissions, and
other documentary evidence in the light most favor-
able to the nonmoving party. *Liparoto Constr, Inc v Gen
Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801
(2009). All reasonable inferences are to be drawn in
favor of the nonmovant. *Dextrom v Wexford Co*, 287
Mich App 406, 415; 789 NW2d 211 (2010). If it appears
that the opposing party is entitled to judgment, the
court may render judgment in favor of the opposing
party. MCR 2.116(I)(2); *Policemen & Firemen Retire-
ment Sys Bd of Trustees v Detroit*, 270 Mich App 74,
77-78; 714 NW2d 658 (2006). A genuine issue of mate-

rial fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

### III. ANALYSIS

Because the innocent-third-party rule did not survive our Supreme Court's decision in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), the trial court erred by denying summary disposition to QBE on this basis. *Bazzi*, 315 Mich App at 768. We see no reason to reiterate in full the holding of *Bazzi*. Suffice it to say that it is precisely on point with respect to the issue presented in the instant case and is precedentially binding. MCR 7.215(C)(2) and (J)(1). Further, we agree with the *Bazzi* panel that the public-policy concerns engendered by the abrogation of the innocent-third-party rule are more appropriately considered by the Legislature, not this Court. *Bazzi*, 315 Mich App at 779-780.

Having concluded that the trial court erred by its denial of summary disposition on the basis of the innocent-third-party rule, we vacate the trial court's order in that respect. However, this Court must further consider the posture of this case relative to the underlying issue of fraud. In denying QBE's motion, the trial court stated that "there is some question, I guess, factually as to whether in fact there was fraud." It further opined that while it was inclined to believe that "there was fraud in obtaining the insurance just from what's before me," "there at least could be some triable issues" in that regard. Based on our review of the record, we see no reason to disturb that finding.

Vacated with respect to the denial of summary disposition under the innocent-third-party rule, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. QBE may tax costs. MCR 7.219(A).

RIORDAN, P.J., concurred with BOONSTRA, J.

MURPHY, J. (*concurring*). Because this Court in *Bazzi v Sentinel Ins Co*, 315 Mich App 763; 891 NW2d 13 (2016), held that the innocent-third-party rule was implicitly and effectively abolished in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), for purposes of mandatory personal protection insurance benefits, commonly referred to as PIP benefits, under the no-fault act, MCL 500.3101 *et seq.*, I am compelled to agree with the majority that QBE Insurance Corporation (QBE) was not barred from pursuing a fraud defense relative to its insurance policy with Whitney Gray. Therefore, I concur with the majority that the trial court erred by denying QBE's motion for summary disposition on the basis of the innocent-third-party rule. I write separately to simply express my view that there is language in our Supreme Court's opinion in *Titan* that plainly and unambiguously reflects that the Supreme Court itself accepted the notion that remedies for actionable fraud are limited in relation to statutorily mandated insurance coverage and benefits.

In *Titan*, 491 Mich at 572, our Supreme Court ruled:

Should Titan prevail on its assertion of actionable fraud, it may avail itself of a traditional legal or equitable remedy to avoid liability under the insurance policy, notwithstanding that the fraud may have been easily ascertainable. *However, as discussed earlier in this opin-*

*ion, the remedies available to Titan may be limited by statute.* [Emphasis added; citation omitted.]

Importantly, attached to the end of the emphasized sentence in the preceding passage was the following footnote: "For example, MCL 500.3009(1) provides the policy coverage minimums for all motor vehicle liability insurance policies." *Titan*, 491 Mich at 572 n 17.[1] When footnote 17 is read in conjunction with the sentence to which it was appended, it necessarily signified the Supreme Court's stance that the $20,000/$40,000 residual liability coverage mandated by MCL 500.3009(1) cannot be diminished or limited by legal or equitable remedies generally available to an insurer for actionable fraud. There can be no other reasonable construction of the sentence and corresponding footnote. Optional insurance coverage above the minimum liability limits contained in a policy procured by fraud might not be reached by an injured third party seeking damages arising out of a motor vehicle accident, but footnote 17 in *Titan* makes abundantly clear that the mandatory liability minimums are to be paid by the insurer under the policy despite any fraud.

---

[1] MCL 500.3009(1) states:

An automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless the liability coverage is subject to a limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident, and subject to that limit for 1 person, to a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident, and to a limit of not less than $10,000.00 because of injury to or destruction of property of others in any accident.

In *Titan*, 491 Mich at 559, the Court recognized that MCL 257.520(f)(1) expressly restricts the ability of an insurer to avoid liability under a policy on the ground of fraud, although the statute has very limited applicability, being relegated to situations in which proof of future financial responsibility is statutorily required.[2] MCL 500.3009(1) has no such language; rather, MCL 500.3009(1) merely sets forth minimum policy requirements in regard to residual liability coverage. With footnote 17, however, the *Titan* Court indicated that MCL 500.3009(1) is an example of a statute that would also limit available remedies for fraud. The only feasible explanation for any fraud-remedy limitation arising out of or created by MCL 500.3009(1) is that the statutory provision pertains to *mandatory* coverage. By observing that MCL 500.3009(1) limits available remedies for actionable fraud, the Supreme Court effectively telegraphed its view that an insurer would be liable under a policy with respect to liability coverage required by MCL 500.3009(1) in connection to an innocent third party injured by a negligent driver who had fraudulently procured the policy.

---

[2] MCL 257.520(f) provides, in pertinent part:

Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

(1) The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy, and except as hereinafter provided, no fraud, misrepresentation, assumption of liability or other act of the insured in obtaining or retaining such policy, or in adjusting a claim under such policy, and no failure of the insured to give any notice, forward any paper or otherwise cooperate with the insurance carrier, shall constitute a defense as against such judgment creditor.

MCL 500.3009(1) is incorporated by reference in the no-fault act with regard to mandatory residual liability coverage. See MCL 500.3101(1) ("The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under . . . residual liability insurance."); MCL 500.3131(2) (residual liability insurance mandate "shall not require coverage in this state other than that required by section 3009(1)"). PIP coverage is also mandated by statute. MCL 500.3101(1) ("The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance[.]"). And "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle[.]" MCL 500.3105(1).[3] Given the mandatory nature of PIP coverage under the no-fault act, and considering the logic gleaned from examining footnote 17 of *Titan*, one can reasonably extrapolate that MCL 500.3101(1) (requiring PIP coverage) would be another example, along with MCL 500.3009(1), of a statute that limits the availability of remedies for actionable fraud.

In sum, *Bazzi*'s construction of *Titan* must be honored, and thus I concur in the majority's holding. It is my belief, however, that the opinion in *Titan* cannot be interpreted as abolishing the innocent-third-party rule in the context of statutorily mandated automobile insurance coverage because to reach such a conclusion would require a wholesale disregard of *Titan*'s footnote 17.

I respectfully concur.

---

[3] MCL 500.3107 describes the allowable expenses and recoverable losses that constitute PIP benefits.